IN THE SUPREME COURT OF NORTH CAROLINA

No. 270PA24

Filed 20 March 2026

HOPE SWICEGOOD BYRD, individually and as administrator of the Estate of Christopher Byrd and Phillip Byrd; ELIZABETH ETHERIDGE, administrator of the Estate of Grady G. Byrd; ROBERT BYRD, individually and as a natural son of Grady G. Byrd; CATHLEEN M. KULZER, individually and as natural mother of Jackelyn K. Kulzer; MATTHEW B. BAILER, administrator of the Estate of Jackelyn K. Kulzer

v.

AVCO CORPORATION; LYCOMING ENGINES; AEROLINA, INC.; JOHN FADOK, JOHN'S HENDERSONVILLE AIRPORT, LLC d/b/a, f/k/a, and/or a/k/a HENDERSONVILLE AIRPORT; BELLE AIRCRAFT MAINTENANCE, LLC; PENN YAN AREO SERVICE, INC. a/k/a PENN YAN NY, INC.; and GREGORY DOBSON

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order of the Court of Appeals dismissing defendants' appeal from an order denying defendants' motion to reconsider entered on 5 June 2024 by Judge Forrest D. Bridges in Superior Court, Buncombe County. Heard in the Supreme Court on 28 October 2025.

*Searson, Jones, Gottschalk & Cash, PLLC, by W. Bradford Searson, and Arthur Alan Wolk, pro hac vice, for plaintiff-appellees.*

*Troy D. Shelton, Mary McHugh Webb, John A. Tarantino, pro hac vice, and Nicole J. Benjamin, pro hac vice, for defendant-appellants.*

*Fox Rothschild LLP, by Nathan M. Wilson, and Carsten Goodrich Hoyt, pro hac vice, for General Aviation Manufacturers Association, amicus curiae.*

*Cranfill Sumner LLP, by Rebecca A. Knudson and Maxwell P. Shafer, and Elizabeth C. Stephens, for North Carolina Home Builders Association, Inc., amicus curiae.*

BERGER, Justice.

Defendants sought appellate review of the trial court's interlocutory order denying their motion to reconsider entry of a partial summary judgment order. By order and without explanation, the Court of Appeals allowed plaintiffs' motion to dismiss the appeal, presumably because it determined it lacked appellate jurisdiction to consider the interlocutory order. The Court of Appeals erred in allowing plaintiffs' motion to dismiss, and we reverse and remand to the Court of Appeals.

## I. Factual and Procedural Background

Defendants Avco Corporation and its unincorporated operating division, Lycoming Engines, (collectively, Avco) manufacture aircraft engines. In 1978, Avco manufactured and shipped an engine that was eventually installed in a small aircraft piloted by Greg Byrd. On 8 May 2015, Greg Byrd, Christopher Byrd, Phillip Byrd, and Jackelyn Kulzer boarded the aircraft at Peachtree DeKalb Airport in Chamblee, Georgia. The aircraft experienced a loss of power as it departed the runway, then collided with a barrier and erupted in flames. All on board were killed.

On 1 May 2017, plaintiffs filed suit asserting various claims against Avco and other defendants, including parties who had performed maintenance on the aircraft's engine in the time between its manufacture and the accident. As is relevant here, plaintiffs asserted claims of strict liability, unfair and deceptive trade practices, negligence, negligent failure to warn, fraud, breach of warranties, and negligent misrepresentation.

The matter was designated as an exceptional case and assigned to a senior resident superior court judge in September 2018. Avco moved for partial summary judgment on 23 December 2019. The trial court granted the motion as to plaintiffs' breach of warranties claim but denied the motion as to plaintiffs' remaining claims. Avco subsequently filed a motion for summary judgment on 17 November 2021, arguing in relevant part that summary judgment was warranted for "each and every one" of plaintiffs' claims because plaintiffs' suit "is barred in its entirety by the statute of repose provided for by the General Aviation Revitalization Act of 1994."[1] On 21 September 2022, the trial court entered an order granting in part and denying in part Avco's motion for summary judgment, effectively dismissing all of plaintiffs' claims against Avco except for plaintiffs' negligent failure to warn claim. Regarding Avco's argument that all of plaintiffs' claims were barred by the statute of repose provided by Congress in the General Aviation Revitalization Act of 1994 (GARA), the trial court reasoned:

> This Court concludes that the affidavit of Plaintiffs' expert witness Allen J. Fielder and attached exhibits, including numerous Service Difficulty Reports, is sufficient to create a genuine issue of material fact as to whether the Plaintiffs can persuade a jury at trial that the manufacturer misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, "required information that is material and relevant to the performance or the maintenance or operation of such aircraft." 49 U.S.C. §

---

[1] Though plaintiffs initially named numerous other defendants in their complaint, plaintiffs voluntarily dismissed their claims against these other defendants and by November 2021, Avco was the sole remaining defendant.

40101 Notes, § 2(b)(1).

The Court further finds that the product liability claims of the Plaintiffs that survive Avco's motion for summary judgment will be limited to those that are encompassed by and related to acts or omissions of Avco within the (b)(1) exception under GARA, as described above. The surviving claims for negligence will be limited to the claim for negligent failure to warn during such period of time determined to fall within the GARA (b)(1) exception, which may require a factual finding by the jury on a potential issue related to the GARA exception under subsection (b)(1).

On 22 February 2024, Avco filed a motion pursuant to Rules 7 and 54(b) of the North Carolina Rules of Civil Procedure, asking the trial court to reconsider and amend its prior order granting in part and denying in part Avco's 2021 motion for summary judgment. On 5 June 2024, the trial court entered an order ostensibly denying Avco's motion for reconsideration. In this order, the trial court's reasoning differed and it determined in relevant part that:

The Summary Judgment Order indicates that a finding of fact may be required as to the (b)(1) exception. At this stage, it is clear that a jury finding *will be required* in order for Plaintiffs' claims to survive GARA. The Court cannot say, as a matter of law, that Defendants either did or did not knowingly misrepresent, withhold, or conceal required information from the FAA. Plaintiffs have alleged enough to get this question to the jury, and the jury should be the ultimate fact finder as to the knowing concealment, if any, of required information. That is all that is required at this stage to deny Defendant's motion.

Avco filed a notice of appeal from this order on 27 June 2024 and petitioned the Court of Appeals for a writ of supersedeas and a temporary stay on 9 September

2024. The Court of Appeals granted a temporary stay on 12 September 2024, and plaintiffs filed a response to Avco's petition for writ of supersedeas on 23 September 2024. On 14 October 2024, the Court of Appeals entered an order denying Avco's petition for writ of supersedeas and dissolving the temporary stay. Avco then petitioned for a writ of supersedeas and a temporary stay, and this Court allowed the temporary stay on 18 October 2024 to preserve the status quo while the Court of Appeals considered the appeal.

Plaintiffs thereafter moved to dismiss Avco's appeal to the Court of Appeals on 7 January 2025. On 24 February 2025, the Court of Appeals entered an order dismissing Avco's appeal. Avco then petitioned this Court for a writ of certiorari to review the Court of Appeals' order of dismissal, and this Court allowed Avco's petitions for writs of supersedeas and certiorari on 21 March 2025.[2]

## II.    Standard of Review

Whether the Court of Appeals has subject-matter jurisdiction to review an appeal from a trial court's order is a question of law which we review de novo. *See State v. Thomsen*, 369 N.C. 22, 24 (2016).[3]

---

[2] After oral argument in this case, plaintiffs' counsel filed a motion to withdraw their responses to the briefs of amicus curiae. The motion is allowed and counsel are reminded to exercise caution when considering making personal allegations of misconduct against opposing counsel.

[3] As is customary with orders entered by the Court of Appeals, the order dismissing Avco's appeal contains no reasoning or analysis supporting its decision. However, because the dismissal was presumably predicated on the Court of Appeals' agreement with some or all of plaintiffs' arguments in their motion to dismiss Avco's appeal, we review de novo whether any of these arguments support dismissal.

## III.  Discussion

### A. Appellate Jurisdiction

The Court of Appeals ordinarily has jurisdiction to consider appeals from "any final judgment of a superior court." N.C.G.S. § 7A-27(b)(1) (2025).  However, there is generally no right of immediate appeal from "[i]nterlocutory orders and judgments . . . made during the pendency of an action which do not dispose of the case, but instead leave it for further action by the trial court to settle and determine the entire controversy."  *Sharpe v. Worland*, 351 N.C. 159, 161 (1999) (cleaned up). Therefore, "to prevent fragmentary and premature appeals that unnecessarily delay the administration of justice," appellate jurisdiction over interlocutory orders is limited to specific, narrow situations.  *Id.* (cleaned up).

One of these situations occurs "when the trial court enters a final judgment as to one or more, but fewer than all, claims or parties and certifies there is no just reason for delay" under Rule 54 of the North Carolina Rules of Civil Procedure.  *Id.* at 161–62.  "When the trial court certifies its order for immediate appeal under Rule 54(b), appellate review is mandatory."  *Id.* at 162.

Appellate jurisdiction may also be invoked when the trial court's interlocutory order "deprives the appealing party of a substantial right which will be lost if the if the order is not reviewed before a final judgment is entered."  *Id.* (cleaned up); *see also* N.C.G.S. § 7A-27(b)(3)(a) (2025); N.C.G.S. § 1-277(a) (2025). Thus, so long as the appealing party carries his or her burden of demonstrating that the interlocutory

order affects a substantial right which will be lost absent immediate appellate review, the Court of Appeals has jurisdiction over that appeal even in the absence of a Rule 54(b) certification.

Here, plaintiffs presented three arguments to the Court of Appeals in their motion to dismiss Avco's appeal. First, they contended that Avco's appeal was untimely because Avco was actually appealing from the trial court's 21 September 2022 order granting in part and denying in part Avco's motion for summary judgment rather than the trial court's 5 June 2024 order denying Avco's motion for reconsideration. Second, plaintiffs argued that even if Avco was timely appealing from the 5 June 2024 order, the appeal was nevertheless subject to dismissal because orders denying motions to reconsider are not immediately appealable. Finally, plaintiffs asserted that even if Avco had properly appealed from the 21 September 2022 order, appellate jurisdiction would be lacking because an order denying a statute of repose argument does not deprive the moving party of a substantial right which will be lost absent immediate appellate review. We address each argument in turn.

**B. Order on Appeal**

Plaintiffs first argued that Avco's appeal was untimely because it was an appeal from the trial court's 21 September 2022 order, not the trial court's 5 June 2024 order. But the record clearly demonstrates that Avco gave timely notice of appeal from the trial court's 5 June 2024 order denying Avco's motion to reconsider

and amend and that no appeal was taken from the trial court's 21 September 2022 order. Accordingly, plaintiffs' first argument could not support dismissal of Avco's appeal.

**C. Appealability of the Order Denying Reconsideration**

In their second argument for dismissal, plaintiffs contend that an order denying reconsideration under Rule 54 cannot satisfy jurisdictional requirements for an interlocutory appeal. Plaintiffs argue that *Zairy v. VKO, Inc.*, 212 N.C. App. 687 (2011), establishes a bright-line rule that appellate jurisdiction can never lie from an interlocutory order denying reconsideration. But *Zairy* does not go that far.

In *Zairy*, the trial court entered an order allowing motions to dismiss for defendants. *Id.* at 688. Subsequently, the trial court denied the plaintiff's motion for reconsideration of that order. *Id.* The plaintiff appealed only from the order denying reconsideration but argued to the Court of Appeals that the trial court erred in its initial order granting the motion to dismiss. *Id.* The Court of Appeals, citing Rule 3(d) of the North Carolina Rules of Appellate Procedure, determined the plaintiff's failure to designate the initial order as the basis of the appeal failed to invoke appellate jurisdiction to review the initial order. *Id.*

As to the order denying reconsideration, which was properly designated in the notice of appeal, the plaintiff argued that N.C.G.S. § 1-277(b) provided the basis for jurisdiction. *Zairy*, 212 N.C. App. at 689. That subsection provides, in relevant part, that "[a]ny interested party has the right of immediate appeal from an adverse ruling

as to the jurisdiction of the court over the person or property of the defendant." N.C.G.S. § 1-277(b) (2025).

The Court of Appeals rejected the plaintiff's argument, concluding that subsection 1-277(b) did not apply to the order denying reconsideration because, although the original order of dismissal was an adverse jurisdictional determination, the order denying reconsideration was "not such an order." *Zairy*, 212 N.C. App. at 690. Instead, the court specifically noted that the reconsideration order "substantively denie[d] plaintiff's request to reevaluate" the initial order and "in no way ma[de] any determinations as to jurisdiction." *Id.* In other words, because the order denying reconsideration in *Zairy* did not itself constitute an "adverse ruling as to the jurisdiction of the court over the person or property of the defendant," N.C.G.S. § 1-277(b), plaintiff's only route for appeal in *Zairy* was interlocutory jurisdiction based on deprivation of a substantial right, which plaintiff failed to argue. *Zairy*, 212 N.C. App. at 690.

But here, Avco appealed from the reconsideration order and accurately argued that the substantive reasoning therein was different from that contained in the original summary judgment order. Avco is, therefore, in a much different position than the *Zairy* plaintiff because Avco is not arguing defects from the original order, but rather that the trial court committed error in the order on reconsideration.

This is consistent with Court of Appeals precedent in *Doe v. City of Charlotte*, 273 N.C. App. 10 (2020). In *Doe*, the trial court dismissed many of the plaintiffs'

claims stemming from an incident with a Charlotte Police Officer. *Id.* at 14. The plaintiffs moved for reconsideration under Rule 59 of the North Carolina Rules of Civil Procedure, and the trial court denied plaintiff's motion. *Id.* The plaintiffs then sought certification of the original order of dismissal for immediate appeal under Rule 54(b). The trial court "entered a stand-alone order granting [p]laintiffs' motion and stating that the trial court 'hereby certifies that its Summary Judgment Order is a final judgment as to all claims against the City of Charlotte and as to the state law claims against Defendant Smith, and that there is no just reason for delay in entering that final judgment.' " *Id.* at 15. Plaintiffs appealed from the original summary judgment order based upon this certification. *Id.*

*Doe* instructed litigants that Rule 54 was textually the more appropriate avenue to pursue reconsideration of a pre-trial determination.[4] That provision "permits trial courts to change their interlocutory orders at any time before entry of final judgment." *Id.* at 20 (citing N.C.G.S. § 1A-1, Rule 54(b)).

But the Court of Appeals reasoned that the plain language of the rule compelled a determination that the stand-alone Rule 54 certification of the prior order could not be a vehicle for appeal. *Id.* Thus, the ex-post certification of the prior summary judgment order in *Doe* was improper because a trial court may not "go back and 'certify' a previously entered order as immediately appealable under Rule 54(b)."

---

[4] The Court of Appeals clarified that Rule 59 "is not an appropriate means of seeking reconsideration of interlocutory, pre-trial rulings of trial courts." *Doe*, 273 N.C. App. at 15.

*Id.* (citing *Branch Banking & Tr. Co. v. Peacock Farm, Inc.*, 241 N.C. App. 213, *aff'd per curiam*, 368 N.C. 478 (2015)).

However, *Doe* recognized that "there is an easy work-around in this situation." *Id.* Because Rule 54 allows trial courts to amend their interlocutory orders at any time prior to final judgment, "the trial court could simply amend the initial order by entering a new order with the *same substantive language* as the initial order but with the additional Rule 54(b) certification language added." *Id.* (cleaned up) (emphasis added). "Then, the aggrieved party can appeal that new order." *Id.*

Although not procedurally identical, *Doe* is persuasive here. As in *Doe*, the trial court in this case entered a "new order" addressing the substance of the underlying claim. Indeed, as noted above, the court's new order expressly *changed* the substance of its initial ruling. This is distinguishable from cases such as *Zairy* where the trial court summarily declined to alter or amend its initial order and simply denied the motion for reconsideration. Thus, while *Zairy* supports the principle that reconsideration orders typically are non-appealable when they fail to restate, alter, or amend the trial court's substantive basis for its ruling, it does not follow that such orders are non-appealable when they *do* contain such a substantive basis— particularly where, as here, that substantive basis alters the court's original reasoning. Accordingly, plaintiffs' sweeping contention that appellate jurisdiction can never lie from an order denying reconsideration is without merit and could not support dismissal of Avco's appeal.

**D. Statutes of Repose as a Substantial Right**

Here, the trial court's 5 June 2024 order "denying" Avco's motion for reconsideration under Rule 54 set forth the trial court's substantive reasoning, which had evolved since its September 2022 summary judgment order. Had the trial court certified its 2024 order under Rule 54(b), our analysis would therefore be complete: the Court of Appeals would possess appellate jurisdiction over Avco's appeal of the 2024 order.

However, because the trial court did not certify its order, Avco cannot rely on Rule 54(b) for appellate jurisdiction. Instead, Avco must establish the appealability of this order by demonstrating that it "deprives [Avco] of a substantial right which will be lost if the order is not reviewed before a final judgment is entered." *Sharpe*, 351 N.C. at 162 (cleaned up). "Our precedent defines a substantial right as one materially affecting those interests which a person is entitled to have preserved and protected by law." *Land v. Whitley*, 388 N.C. 296, 303 (2025) (cleaned up). To support interlocutory jurisdiction, the "right must be one they might lose if the order is not reviewed before final judgment." *Id.* (cleaned up). "Because defining a substantial right is often easier than identifying one, the particular facts of th[e] case and the procedural context in which the order from which the appeal is sought was entered serve as helpful guidance." *Id.* at 304 (cleaned up).

For example, this Court has determined that sovereign immunity and governmental immunity are substantial rights sufficient to support interlocutory

jurisdiction because "those immunities are *immunity from suit . . .* that shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages." *Id.* (cleaned up). Because "[t]hat immunity is effectively lost if a case is permitted to go to trial," appellate review after a trial and final judgment could not remedy an erroneous interlocutory order adversely affecting that immunity. *Id.* On the other hand, we have held that immunity "from any civil *liability*" does not constitute a substantial right supporting interlocutory jurisdiction because such immunity does not protect a defendant "from the burden of being dragged into court to defend themselves." *Id.* at 305 (emphasis added).

At the Court of Appeals, Avco argued that its appeal of the trial court's interlocutory order denying reconsideration was proper because that order deprived Avco of its substantial right to immunity from suit provided by GARA's statute of repose. Plaintiffs contended that under the Court of Appeals' precedent in *Lee v. Baxter*, 147 N.C. App. 517 (2001), a statute of repose does not confer a substantial right and therefore an order denying a statute of repose defense is not immediately appealable.

In *Lee*, the plaintiff was injured when her husband drove their Ford Ranger off the road and crashed. *Id.* at 518. After her husband died of unrelated causes two months after the accident, the plaintiff sued her husband's estate to recover damages for her injuries sustained in the accident. *Id.* The estate filed a third-party complaint against Ford "alleging entitlement to contribution and/or indemnification based on

negligence and breach of warranty." *Id.* Ford moved for summary judgment under a then-existing six-year statute of repose. The trial court denied Ford's motion and certified the order for appeal under Rule 54(b). *Id.*

The Court of Appeals first determined that the appeal was improperly certified under Rule 54(b) because the appealed from order "was not final as to either a claim or a party." *Id.* at 519. It then rejected Ford's argument "that the statute of repose gives a defendant a vested right not to be sued and is therefore similar to the defense of immunity, which is considered a substantial right." *Id.* (cleaned up). According to the *Lee* court, Ford's comparison fell short because "[u]nlike a claim for immunity, Ford's right to raise the statute of repose defense will not be lost if we do not review the case prior to a final judgment" because "[t]he only loss Ford will suffer will be the time and expense of trial." *Id.* at 520. The court also noted our precedent holding that an order denying a statute of limitations defense does not affect a substantial right and "s[aw] no reason to treat a motion for summary judgment based on the statute of repose differently than a motion to dismiss based on the statute of limitations." *Id.*

But *Lee* is clearly wrong.[5] *Lee* conflated statutes of repose and limitations because it fundamentally misunderstood the right conferred by a statute of repose.

---

[5]The panel below was bound to follow *Lee* regardless of its soundness due to our decision in *In re Civil Penalty*, 324 N.C. 373, 384 (1989), which prohibits the Court of Appeals from altering or correcting its own precedent. As *Lee* was the probable basis for the Court of Appeals' dismissal of Avco's appeal, and as there are significant errors in that decision's reasoning, we take this opportunity to overrule *Lee* and its progeny.

"[A] statute of limitations is not the same as a statute of repose." *McKinney v. Goins*, 387 N.C. 35, 48 n.7 (2025). "Unlike a statute of limitations, a statute of repose 'establishes a time period in which suit must be brought *in order for the cause of action to be recognized.*' " *Id.* (quoting *Boudreau v. Baughman*, 322 N.C. 331, 340–41 (1988)). "Unlike statutes of limitations, which run from the time a cause of action accrues, statutes of repose create time limitations which are not measured from the date of injury." *Hargett v. Holland*, 337 N.C. 651, 654 (1994) (cleaned up). And unlike statutes of limitations, which are "clearly procedural, affecting only the remedy directly and not the right to recover," statutes of repose are "condition[s] precedent to the action itself." *Boudreau*, 322 N.C. at 340. "If the action is not brought within the specified period, the plaintiff literally has *no* cause of action." *Id.* at 341 (cleaned up). Essentially, a "statute of repose creates an additional element of the claim itself which must be satisfied in order for the claim to be maintained." *Hargett*, 337 N.C. at 654.

"[T]he repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue." *Boudreau*, 322 N.C. at 340 (alteration in original) (quoting *Black v. Littlejohn*, 312 N.C. 626, 633 (1985)). "For this reason we have previously characterized the statute of repose as a *substantive* definition of rights rather than a procedural limitation on the remedy used to enforce rights." *Id.* at 341 (emphasis added). Put simply, when the statute of repose has expired, a defendant cannot be hailed into court to bear the burden and

expense of trial.

Federal courts have consistently determined that section 2 of GARA provides a statute of repose. See *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1084 (9th Cir. 2001) ("[GARA] is a classic statute of repose[;] . . . if an accident occurs one day before the GARA period runs, an action will be possible and will be governed by the usual statute of limitations. If it occurs on the day after the GARA period runs, no action whatsoever is possible."); *Crouch v. Honeywell Int'l, Inc.*, 720 F.3d 333, 342 (6th Cir. 2013) ("GARA specifically bars lawsuits arising out of defects in an aircraft part that is more than eighteen years old.") *see also Weiss v. Cont'l Aerospace Tech., Inc.*, 298 N.C. App. 293, 298 (2025) (recognizing GARA as creating "an 18-year statute of repose for civil actions against manufacturers of general aviation aircraft and component parts").

But even though the federal courts agree that GARA is a statute of repose rather than limitations, there are differing views on whether the interlocutory denial of a GARA defense entitles a defendant to immediate appellate review. Federal appellate review of interlocutory orders, which differs from our state jurisprudence detailed above, is limited to orders that fall within the "collateral order doctrine." *Estate of Kennedy v. Bell Helicopter Textron, Inc.*, 283 F.3d 1107, 1110 (9th Cir. 2002).

> The collateral order doctrine arises from a practical construction of 28 U.S.C. § 1291's final decision rule and establishes a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system nonetheless be treated as final. In order to fall into this narrow class of immediately

> appealable orders, a district court decision must be conclusive, resolve important questions completely separate from the merits, and render such important questions effectively unreviewable on appeal from a final judgment in the underlying action.

*Id.* (cleaned up).

There are meaningful differences between the federal collateral order doctrine and our substantial right test, but there is an important similarity. Just as our test requires an appellant claiming an immunity-based substantial right to demonstrate entitlement to an immunity that "shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages," *Land*, 388 N.C. at 304 (cleaned up), the third condition of the collateral order doctrine is satisfied when a defendant is afforded "an explicit statutory or constitutional guarantee that trial will not occur" and the lower court's failure to recognize this guarantee constitutes a "deprivation of the right not to be tried." *Estate of Kennedy*, 283 F.3d at 1110 (citing *Midland Asphalt Corp v. United States*, 489 U.S. 794, 800–01 (1989)).

The Ninth Circuit has held that "[a]n appeal from an adverse decision of the district court by a party claiming GARA protection falls within the collateral order doctrine" because "[i]t is clear that an essential aspect of the GARA statute of repose is the right to be free from the burdens of trial." *Id.* at 1111. On the other hand, the Third Circuit has reached the opposite conclusion and determined that an interlocutory order "denying application of the GARA statute of repose should not be appealable under the collateral order doctrine" in part because "the GARA statute of

repose is not a pure immunity [as] it contains exceptions under which immunity does not attach." *Robinson v. Hartzell Propeller, Inc.*, 454 F.3d 163, 173 (3d Cir. 2006).

We are not bound to follow either of these federal decisions, nor are we inclined to engraft federal collateral order doctrine requirements onto our well-developed substantial right jurisprudence. However, we note that the Third Circuit's emphasis on GARA's exceptions is particularly inapposite to our analytical framework, which "requires consideration of the particular facts of that case and the procedural context in which the order from which the appeal is sought was entered." *Dep't of Transp. v. Rowe*, 351 N.C. 172, 175 (1999) (cleaned up). Indeed, the Third Circuit's view that immediate appealability is limited to a "pure" immunity and not an immunity that "contains exceptions" squarely conflicts with our state court doctrine. Many immunities that we have long recognized as immediately appealable—such as public official immunity or governmental immunity—contain multiple exceptions. *See Bartley v. City of High Point*, 381 N.C. 287 (2022) (holding that trial court's interlocutory order denying defendant's motion for summary judgment on the basis of public official immunity was immediately appealable, but remanding to determine factual issue related to one of the immunity's exceptions); *Meyer v. Walls*, 347 N.C. 97 (1997) (discussing exceptions to and waiver of governmental immunity).

Whether plaintiffs here adequately pled an exception to GARA may well be determinative on the *merits* of Avco's immunity argument, but it is not relevant to whether Avco has demonstrated that the trial court's order "affects a substantial

right . . . which will be lost if the order is not reviewed before a final judgment is entered." *Sharpe*, 351 N.C. at 162 (cleaned up). When properly viewed as a "classic statute of repose," *Lyon*, 252 F.3d at 1084, GARA provides Avco with the "right to be free from the burdens of trial," *Estate of Kennedy*, 283 F.3d at 1111, and the trial court's order deprived Avco of that right.

With this understanding in hand, *Lee*'s reasoning that a defendant's right to raise the statute of repose defense would not be lost absent review "prior to a final judgment" because the defendant's "only loss . . . w[ould] be the time and expense of trial," is erroneous. Like the immunities discussed above, the expiration of a statute of repose "shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages." *Land*, 388 N.C. at 304. And that shield is obviously "lost if a case is permitted to go to trial." *Id.* When a defendant is entitled to a statute of repose defense, that entitlement relieves the defendant from the burden of even having to come to court to defend itself, and that burden cannot be lifted retroactively by an appellate court following a trial and final judgment. Accordingly, we overrule *Lee*'s holding that an interlocutory order denying a statute of repose defense cannot support interlocutory jurisdiction.

Accordingly, the Court of Appeals has appellate jurisdiction to review the trial court's interlocutory order and determine whether that deprivation was erroneous. We reverse the order of the Court of Appeals dismissing Avco's appeal and remand to that court so that it may do so.

## IV.    Conclusion

Plaintiffs presented three arguments to the Court of Appeals in support of their motion to dismiss Avco's interlocutory appeal.  Though the Court of Appeals was bound to follow its own precedent and allow plaintiffs' motion, we conclude that precedent was erroneous and that plaintiffs' arguments could not have supported dismissal.  Accordingly, we reverse the order of the Court of Appeals and remand.  On remand, the Court of Appeals is instructed to review whether the trial court's 5 June 2024 order correctly concluded that Avco is not entitled to the immunity from suit provided by GARA's statute of repose.

REVERSED AND REMANDED.

Justice EARLS dissenting.

The majority appears to elevate a conditional statute of repose defense to a sort of quasi-governmental immunity for the purposes of taking an interlocutory appeal. This decision is contrary to longstanding doctrine and fails to model a workable method for discerning when a private defendant is entitled under statute to immediate appellate review to avoid the time and expense of trial. By applying its holding to all statutes of repose defenses, the majority's decision categorically enlarges what has historically been a narrow and fact-specific substantial rights doctrine and signals that appellate courts will arrogate more power to review interlocutory orders involving factual issues. This trend of diverting more issues to midstream appellate review delays civil justice, takes time away from other cases, and increasingly inserts appellate courts into potentially controversial policy issues. *See generally* Elizabeth Lee Thompson, *The Changing Face and Increasingly Targeted Tool of State Interlocutory Appeals*, 55 Seton Hall L. Rev. 483, 491 (2024). In short, the majority's broad expansion of immunity from suit and open-ended opportunities for pretrial appeals dramatically limits access to civil justice for injured parties. I would stand by our narrow and fact-specific substantial rights doctrine and hold that the Court of Appeals did not err by dismissing Avco's interlocutory appeal where the trial court concluded that a jury trial would be necessary to determine whether the statute of repose's protections apply at all.

Because participation in the civil litigation process is a routine and necessary part of what it means to be subject to our civil justice system, parties generally have no right to "avoid[ ] the time and expense of trial." *Lee v. Baxter*, 147 N.C. App. 517, 520 (2001). Denying an injured person their day in court just because the defendant is completely immune from the lawsuit itself is generally quite unfair. The narrow instances where defendants may receive such preferential treatment are rooted in longstanding common law or carefully considered statutory provisions. These narrow exceptions are meant to balance important, competing policy interests distinctly impacted by the burden and uncertainty of litigation. Common law governmental immunity from suit, for example, protects the democratic process by safeguarding the competent and vigorous enforcement of governmental policies by public officials. *E.g.*, *Bartley v. City of High Point*, 381 N.C. 287, 294 (2022). The statutory immunity from suit offered by the Workers' Compensation Act offers "limited but assured" benefits for employees injured on the job, in exchange for shielding employers from potentially larger but less certain awards of damages for the same injuries. *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556 (2003) (cleaned up). *See generally Land v. Whitley*, 388 N.C. 296, 304 (2025) (summarizing these distinctions).

The General Aviation Revitalization Act (GARA) is an example of conditional statutory immunity from suit. It affords airline manufacturers immunity from suit in only some circumstances: *if* a case falls outside of four factual scenarios, *then* the defendant airline manufacturer is immune from suit. *See* General Aviation

Revitalization Act of 1994, Pub. L. No. 103-298, 108 Stat. 1552 (codified at 49 U.S.C. § 40101 note). That is, if an exception applies, the repose defense does not. Under our fact-specific substantial rights doctrine, then, Avco as the party seeking appeal had the burden to show that it is entitled to immunity from suit as a matter of law such that denial of its repose defense impairs its substantial rights and cannot be remedied after final judgment. Here, because the trial court "c[ould not] say, as a matter of law, that Defendants either did or did not knowingly misrepresent, withhold, or conceal required information from the [Federal Aviation Administration (FAA)]," defendant Avco was not entitled to immediate appellate review of that fact-based, interlocutory determination. The Court of Appeals did not err by dismissing this appeal, and I respectfully dissent.

## I.    The Order on Appeal

The majority's sparse description of the "order on appeal" implies that the parties only disputed whether Avco timely appealed. *See* majority *supra* Section III.B. This description is not quite accurate or helpful.

The plane crash giving rise to this lawsuit happened in 2015. The administrators and heirs of those killed in the accident (collectively, Byrd) brought suit in May of 2017. Defendants (collectively, Avco) moved for partial summary judgment on some claims in 2019, which the trial court granted in part and denied in part in 2020.

Avco moved for summary judgment on the remaining claims on 17

November 2021, invoking GARA's statute of repose. It argued that none of the parts alleged to have caused the accident were manufactured, installed, or sold by Avco within eighteen years of the accident, so GARA's general statute of repose applied, and that it had no duty to warn about the alleged defects, so GARA's misrepresentation exception did not apply. Avco also made a motion in limine to exclude testimony from Byrd's expert, Allen J. Fielder, on service difficulty reports tied to Avco that could form the basis of Avco's alleged misrepresentation.

On 21 September 2022, the trial court granted Avco's motion for summary judgment on all of Byrd's claims against Avco except for its "negligent failure to warn" claim. The trial court noted that GARA's misrepresentation exception might apply to this claim. That is, the service difficulty reports examined in testimony from Mr. Fiedler could support "that the manufacturer misrepresented to the [FAA], or concealed or withheld from the [FAA], 'required information that is material and relevant' " to the product that caused Byrd's injury, as the trial court stated, quoting GARA, 49 U.S.C. § 40101 note § 2(b)(1). The service difficulty reports together with Fiedler's testimony and other exhibits were, in the trial court's view, "sufficient to create a genuine issue of material fact." Thus resolving Byrd's negligent misrepresentation claim "may require a factual finding by the jury." The trial court denied summary judgment, and Avco did not appeal this order.

Later, in 2023 and 2024, the trial court considered the outstanding motion in limine on Mr. Fiedler's testimony, and in February of 2024, Avco moved for the court to reconsider and amend its 2022 order denying summary judgment in part. In May of 2024, Avco also moved to preclude evidence of the service difficulty reports on which the trial court had relied.

On 5 June 2024, the trial court ostensibly "denied" the motion to reconsider and amend the 2022 order partially denying summary judgment. But it is clear from the substance of the order that the court partially allowed Avco's motion to the limited extent that the court amended its reasons for denying summary judgment.

First, the trial court credited Avco's argument that the service difficulty reports could not form the basis of the GARA misrepresentation exception because Avco was not "required" to report those incidents to the FAA. Even so, the trial court noted that summary judgment orders are not required to "list every piece of 'required information' " that created triable fact issues under GARA. The trial court elaborated that other evidence could form the basis for the misrepresentation exception. Namely, Byrd had adduced evidence that "a potential solution to camshaft issues was presented to Defendants," and "it seems that facts exist that would support a finding that Defendants were required to investigate and report to the FAA the alleged issues with their camshaft and a potential fix." The court found persuasive Byrd's forecasting that

organization designation authorization (ODA) holders like Avco are required to investigate and report to the FAA "any suspected unsafe condition or finding of noncompliance with the airworthiness requirements for any product, part or appliance," and this could potentially be the basis of "required" information that was not disclosed under this misrepresentation exception.

The trial court ultimately stood by its initial determination that Avco was not entitled to summary judgment because "a jury finding *will be required* in order for Plaintiff's claims to survive GARA," and because the trial court could not conclude, "as a matter of law, that Defendants either did or did not knowingly misrepresent, withhold, or conceal required information from the FAA." It thus "denied" the motion to reconsider. The trial court proceeded with scheduling trial to start on October 2024, over seven years after Byrd filed suit. This narrow order denying Avco's motion for reconsideration is what Avco appealed and what the Court of Appeals subsequently dismissed.

Our precedent is not quite clear on the scope of possible appellate review where a trial court ostensibly denies a motion to reconsider an order denying summary judgment but offers amended reasons for doing so. Both Byrd and Avco advanced persuasive arguments for their respective positions. I agree with Avco that in general, a best practice for appellate review is to look at the substance of what an order is doing, not simply the decretal portion indicating "affirm" or "deny." *E.g.*, *Brown v. Brown*, No. COA06-682, slip op. at 6 (N.C. Ct. App. Jan. 15,

2008) (unpublished); *cf. also Stanback v. Stanback*, 297 N.C. 181, 205 (1979) (explaining that an order on a Rule 12(b)(6) motion is converted to a Rule 56 summary judgment order where the trial court considers matters outside the pleadings), *disapproved of on other grounds by*, *Dickens v. Puryear*, 302 N.C. 437 (1981). Applying that practice here could support that Avco can appeal the entire summary judgment determination on Byrd's negligent failure to warn claim because the trial court did in fact partially allow Avco's motion to reconsider and amend the 2022 order.

But that conclusion is somewhat in tension with the trial court's correct observation that it was not required in the first instance to identify all the reasons for denying Avco's motion for summary judgment—indeed it was not required to provide any reasons at all. *E.g.*, *Bland v. Branch Banking & Tr. Co.*, 143 N.C. App. 282, 285 (2001). Troublingly, if a movant is permitted to take an interlocutory appeal of an order denying reconsideration so long as the order lists new or additional reasons to support the same conclusion, the non-movant is effectively punished by the trial court's effort to transparently explain the bases for its rulings. Such a rule could create the wrong incentives by encouraging trial courts not to offer reasons at all, potentially confusing issues for parties and making appellate review much more difficult. That rule would also invite parties to use motions to reconsider—which are not limited in time or frequency by the Rules of Civil Procedure—as a tactic for delaying trial proceedings. *See* N.C.G.S. § 1A-1, Rule 54(b) (2025). Our interlocutory order doctrine exists to safeguard against exactly this type of death by a thousand

fragmentary appeals. *See Bailey v. Gooding*, 301 N.C. 205, 209 (1980).

In my view, the proper way to resolve this tension in our competing procedural rules is to try to do what is fair and consistent. *Cf. State v. Hart*, 361 N.C. 309, 317 (2007) (noting that the Rules of Appellate Procedure were designed to safeguard "[f]undamental fairness and the predictable operation of the courts"). Here, it would be unfair to Byrd to allow Avco the opportunity to secure wide-ranging appellate review of all pretrial matters decided in orders that Avco chose not to appeal. Avco may not use a motion to reconsider as a freewheeling opportunity to relitigate disfavored pretrial rulings and reopen the opportunity for interlocutory appeal. It would similarly be unfair to Avco to deny it the opportunity to seek appellate review of the 2024 reconsideration order where the trial court admitted its earlier reasoning was wrong yet offered new reasons to support the same conclusion. Fairness considerations thus compel the conclusion that the "order on appeal" is limited to the trial court's amended reasons for denying summary judgment—namely that Avco may have been required as an ODA holder to report certain information to the FAA and that a jury finding is required as to whether Avco misrepresented such information or failed to disclose it.

## II.     GARA's Conditional Statute of Repose

Because I would hold that the order on appeal is limited to the trial court's amended reasoning in its order denying reconsideration, the next question is

whether GARA creates a substantial right in immunity from suit where a trial court determines that it is a question of fact whether the statute of repose applies.

An interlocutory order is one "made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 361–62 (1950). Such orders are generally not immediately appealable. *E.g.*, *Land*, 388 N.C. at 303. That is true even where the interlocutory order decides a potentially dispositive pretrial motion. For example, an order denying a statute of limitations defense is not immediately appealable, *Johnson v. Pilot Life Insurance Co.*, 215 N.C. 120, 121–22 (1939), nor is an order denying a motion to dismiss for lack of justiciable controversy or a motion for judgment on the pleadings, *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 208–09 (1978) (collecting cases).

An exception to this general rule exists where an interlocutory order affects a substantial right. *Davis v. Davis*, 360 N.C. 518, 524 (2006); N.C.G.S. §§ 1-277(a), 7A-27(b)(3) (2025). In that case, a two-part test applies: the order is immediately appealable if (1) "the right itself [is] substantial," and (2) "the deprivation of that substantial right . . . potentially work[s] injury to plaintiff if not corrected before appeal from final judgment." *See Goldston v. Am. Motors Corp.*, 326 N.C. 723, 726 (1990) (citing *Wachovia Realty Invs. v. Hous., Inc.*, 292 N.C. 93 (1977)). Determining

what rights are "substantial" requires a case-by-case and fact intensive approach, "considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Waters*, 294 N.C. at 208; *see also Land*, 388 N.C. at 303–04. The burden of showing a substantial right is on the appellant. *See Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380 (1994) ("In civil cases, the burden is on the appellant not only to show error but to enable the court to see that he was prejudiced or the verdict of the jury probably influenced thereby." (quoting *Hajmm Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 589 (1991) (cleaned up))).

For substantial rights purposes, an appellant's interest in being immune *from suit* gives rise to an appealable interlocutory order, but there is no equivalent substantial right in an immunity from liability generally. *Land*, 388 N.C. at 307–08. Immunities from suit are relatively limited. For example, governmental immunities offer immunity from suit in furtherance of two important public-regarding goals: "fearless, vigorous, and effective administration of government policies" and avoiding "the negative impact that trepidation about personal liability might otherwise have on the willingness of individuals to assume public office." *Bartley*, 381 N.C. at 294 (cleaned up). This immunity creates a substantial right that cannot be remedied after final judgment because the public official would have to proceed through the litigation process and experience the deterrent effect of the litigation before the interest can be vindicated. Thus without right of

immediate appeal, the immunity from suit is "effectively lost." *Land*, 388 N.C. at 304.

Simple statutory immunities from liability, however, do not serve similar public purposes and thus do not convey in the claimant a substantial right in avoiding trial. *E.g.*, *id.* at 305. In *Land*, for example, we held that a statute affording a health care provider "immunity from any civil liability" subject to several factual exceptions created only conditional protection from liability, not an immunity from suit, and thus did not create a substantial right that cannot be vindicated on appeal from a final judgment. *Id.* (quoting N.C.G.S. § 90-21.133(a) (2023)). In that way, conditional immunity from liability is analogous to other potentially dispositive affirmative defenses that do not give rise to an immediate right of appeal.

Taking a case-by-case approach, then, we must carefully parse GARA's text and structure to determine what type of immunity it conveys. GARA's text provides that "no civil action for damages for death or injury to persons . . . arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft" eighteen years after a specified date, irrespective of when the action accrued. GARA, 49 U.S.C. § 40101 note §§ 2(a), (3). The cut-off period in subsection 2(a) is subject to four enumerated "[e]xceptions." *Id.* at § 2(b). In addition to the misrepresentation exception, subsections (b)(2)–(4) also depend on facts specific to the action: the identity of the claimant and their

attributes (that they were seeking medical treatment or "not aboard the aircraft at the time of the accident") or that the action is brought to enforce "a written warranty." *Id.* at § 2(b)(1)–(4).[1]

Thus, GARA is structured as a conditional statute of repose designed to spare airline manufacturers from suit decades in the future, conditioned on certain factual circumstances. *See Hargett v. Holland*, 337 N.C. 651, 654 (1994) (describing that a statute of limitations runs from the time a cause of action accrues, while a statute of repose usually runs from some time period unrelated to the claimant's injury). Text and structure confirm what legislative history suggests is GARA's purpose: to carefully balance competing interests. The eighteen-year repose period is intended to protect the aircraft industry from "the long tail of liability attached" to a well-maintained aircraft. *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1084 (9th Cir. 2001), *cert. denied*, 534 U.S. 1079 (2002) (citing H.R. Rep. No. 103-525, pt. I, at 1–4 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1638, 1638–41). Simultaneously, the factual exceptions limit potentially unfair consequences of such an immunity to "afford[ ] fair treatment to persons injured in general aviation aircraft accidents." H.R. Rep. No. 103-525, pt. I, at 1–2.

Because Congress conditioned immunity on fact-heavy determinations like

---

[1] The four exceptions are where (1) the manufacturer knowingly misrepresented or concealed material information from the FAA causally related to the claimant's harm; (2) the claimant was aboard as a medical or emergency passenger; (3) the claimant was not aboard the aircraft at the time of the accident; or (4) the action arises under an otherwise enforceable written warranty. *See* GARA, 49 U.S.C. § 40101 note § 2(b)(1)–(4).

whether the manufacturer made knowing misrepresentations, it follows that immunity from suit only attaches where those facts do not apply. *Cf. Land*, 388 N.C. at 305 ("Given that the General Assembly predicated immunity from liability on fact-heavy determinations like whether the defendant acted in good faith or whether the services were impacted by the COVID-19 pandemic, it follows logically that the General Assembly did not intend to create an immunity from being brought into court entirely."). That is, a defendant does not have a substantial right that cannot be remedied after a final judgment where they are not entitled as a matter of law to the statute of repose defense.

Because GARA creates a conditional immunity from suit, the relevant substantial-rights framework is that expressed in *Wallace v. Jarvis*, 119 N.C. App. 582 (1995). There the Court of Appeals addressed a statute making "[p]ersons . . . immune from suit for all statements made without malice, and intended for transmittal to the North Carolina State Bar[,] . . . pertaining to alleged misconduct, incapacity or disability or to reinstatement of an attorney." *Id.* at 584 (quoting N.C.G.S. § 84–28.2 (1985)). The defendant-appellant who had made statements to the Bar claimed that this statute gave him immunity from suit akin to sovereign immunity. *Id.* The Court of Appeals rejected that argument, reasoning that the statutory immunity from suit was available to the defendant-appellant only "if he satisfies all of the [statutory] requirements," i.e. "only if his communications to the State Bar were made without malice." *Id.* at 585. And because the defendant-

appellant was only immune in that factual circumstance, he did not have a substantial right to appeal where the trial court denied summary judgment because there was sufficient evidence to go to the jury on the issue of whether the statements were made with malice. *Id.* Simply put, the defendant had no substantial right which would be jeopardized absent an immediate appeal where the defendant did not show as a matter of law that he was entitled to the statutory immunity from suit, and the appeal was properly dismissed. *Id.*

Here, the *Wallace* framework applies only to the amended reasons in the trial court's 2024 order. The Court of Appeals was limited to reviewing the trial court's determination that "a jury finding *will be required* in order for Plaintiff's claims to survive GARA," and the trial court could not "say, as a matter of law, that Defendants either did or did not knowingly misrepresent, withhold, or conceal required information from the FAA." Avco's statutory obligations as an ODA holder formed the basis for this potential misrepresentation, and "Plaintiffs have alleged enough to get this question to the jury, and the jury should be the ultimate fact finder as to the knowing concealment, if any, of required information." Because Avco's entitlement to the conditional statutory immunity from suit depends on a factual question, and because it has not shown that the trial court erred as a matter of law in construing its ODA obligations, the Court of Appeals did not err by dismissing Avco's appeal. *See*

*Wallace*, 119 N.C. App. at 585.[2]

### III.    A Conditional Statute of Repose Defense Is Not Akin to Governmental Immunity

The majority's decision does not simply interpret GARA as applied to the narrow issues raised in the order on the motion to reconsider. Rather, the Court broadly proclaims that statutes of repose as a category create substantial rights in immunity from suit that are not remedied on review after a final judgment. This holding is insufficiently attentive to the variety of legislatively created repose schemes, inconsistent with our fact-specific substantial rights doctrine, and unjustified by reference to policy concerns that motivate governmental immunities. And even if deadly plane crashes are hopefully rare, this decision poses significant consequences for other areas of law. Other statutes create repose periods subject to factual exceptions, including for claims by homeowners injured by construction defects in their new home, or patients who experienced medical treatment gone awry. Where fact issues determine whether a repose statute even applies, the effect of the majority's rule is to delay resolution of meritorious claims and undermine the appropriate role of the trial courts and

---

[2] Notably, federal precedent is not inconsistent with this approach. The Ninth Circuit allowed an interlocutory appeal where the issue presented was classifying the triggering event for the GARA statute of repose period—a question of law about the meaning of the statute. *Est. of Kennedy v. Bell Helicopter Textron, Inc.*, 283 F.3d 1107, 1112 (9th Cir. 2002). The Third Circuit rejected an interlocutory appeal involving the applicability of the misrepresentation exception, as that factual issue was closely intertwined with the merits. *Robinson v. Hartzell Propeller, Inc.*, 454 F.3d 163, 173–74 (3d Cir. 2006).

juries as finders of fact.

The majority takes this opportunity to overturn *Lee v. Baxter*, but it is important to remember that case stood for the simple proposition that there is generally no substantial right in "avoiding the time and expense of trial." 147 N.C. App. at 520. That simple proposition must be true. After all, any recipient of an adverse ruling on a potentially dispositive pretrial motion could claim a right to avoid the time and expense of trial if their underlying legal theory is correct. This cannot distinguish a statute of repose from other affirmative defenses for substantial rights purposes. And it is contrary to our system of civil justice, which presumes that the burdens of suit are necessary and appropriate to allocate liability on responsible parties.

The majority reaches for adjacent precedent describing a statute of repose as a substantive limitation of rights rather than a procedural one. But it is difficult to see why this distinction makes a difference for substantial rights purposes. If, conceptually, a statute of repose adds an element to a claim, and thus cuts off the cause of action at the outset (in contrast to procedurally limiting a right to recover on a valid claim as in a statute of limitations), that still makes the denial of a statute of repose defense akin to denial of a motion to dismiss for failure to state a claim. *See Hargett*, 337 N.C. at 654 ("A statute of repose creates an additional element of the claim itself which must be satisfied in order for the claim to be maintained."); *McCrater v. Stone & Webster Eng'g Corp.*, 248 N.C.

707, 710 (1958) ("[Compliance with a statute of repose] is an inseparable part of the plaintiff's substantive right of action."). An interlocutory denial of a motion to dismiss for failure to state a claim, absent sovereign immunity grounds, is a classic non-appealable interlocutory order that does not affect a substantial right. *See, e.g., Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 326 (1982).

The majority's own language shows its distinctions are unworkable. When a plaintiff's complaint fails to state a claim, it is similarly true that "the plaintiff literally has *no* cause of action." *See* majority *supra* Section III.D. If the trial court lacks subject matter jurisdiction to hear the claim, neither the plaintiff nor the court have the right to "hail[ the defendant] into court." *See* majority *supra* Section III.D. Yet in both of these scenarios we have long held that the corresponding interlocutory order is non-appealable and does not affect a substantial right that cannot be remedied after final judgment. That there is no general right to avoid the burdens of trial is, in part, a core assumption of a non-appealable interlocutory order doctrine.

The majority further analogizes repose statutes to governmental immunity. It implies that because GARA's statute of repose contains exceptions, and governmental immunity contains exceptions, a statute of repose defense conveys immunity from suit akin to governmental immunity. *See* majority *supra* Section III.D. But other non-appealable interlocutory orders that do not affect a substantial right also have exceptions. For example, orders denying a motion to dismiss for lack of a justiciable controversy do not affect a substantial right, *N.C. Consumers Power, Inc. v. Duke*

*Power Co.*, 285 N.C. 434, 439 (1974), even though our justiciable controversy doctrine is subject to exceptions such as mootness, *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 585–86 (1986). Simply put, whether the underlying legal doctrine contains exceptions is a poor test for whether the order affects a substantial right. Adopting such a test is at odds with our substantial rights doctrine, which is supposed to examine the particular facts of the appeal and the issues raised. *See Land*, 388 N.C. at 304.

Our precedent in *Black v. Littlejohn*, 312 N.C. 626 (1985), does not support the majority's conclusion either. The facts of that case were that a doctor allegedly performed a hysterectomy on a patient; only later did the patient learn that the surgery was not likely needed to treat her endometriosis because she could have just taken a new drug instead. *Id.* at 626–27. The Court considered whether the patient's later discovery of the existence of the new drug rendered her injury via the hysterectomy one that was not "readily apparent" for the purposes of the discovery-based statute of limitations. *Id.* at 628. The legislature, we noted, balanced the harshness of the statute of repose against the more nuanced discovery rules in the statute of limitations aimed at protecting unsuspecting victims. *Id.* at 637. Where three distinct limitations periods applied, and where the statute of repose loomed to cut off otherwise valid claims, we more generously interpreted the "readily apparent" rule of discovery to allow the patient's claims to proceed past a Rule 12(b)(6) motion. *Id.* at 635–36. That reasoning underscores

that statutes of repose are traditionally part of a nuanced regulatory scheme, and our analysis of the substantial rights issues should be attuned to a plaintiff's actual allegations and corresponding statutory exceptions.

It bears emphasizing that statutes of repose are frequently conditional, not pure immunities from suit. For example, the home builder's statute also has factual exceptions: that repose defense excludes, for example, persons guilty of fraud. N.C.G.S. § 1-50(a)(5)(e) (2025). Similarly, the medical malpractice statute of repose contains an exception where the source of the injury was a "foreign object . . . having been left in the body." N.C.G.S. § 1-15(c) (2025). These types of factual exceptions are inconsistent with the notion that the legislature intended to grant defendants immunity from the very lawsuits necessary to show whether those factual exceptions apply. *See Land*, 388 N.C. at 305.

Another consequence of treating the denial of all statute of repose defenses as affecting substantial rights is also that it apparently changes our pleading standards. Generally, "a plaintiff has no burden at the pleading stage to allege facts showing that its complaint was filed within the applicable statute of repose." *Gaston Cnty. Bd. of Educ. v. Shelco, LLC*, 285 N.C. App. 80, 84 (2022). The prevailing practice has been that "it is generally inappropriate to grant a defendant's Rule 12(b)(6) motion to dismiss a complaint merely because it failed to *allege* facts showing that it was filed within the applicable statute of repose." *Id.* Absent some other source of law, plaintiffs are not required to plead around a statute of repose defense; rather, a "repose defense

may be raised by way of a motion to dismiss if it appears on the face of the complaint that such a statute bars the claim." *Hargett*, 337 N.C. at 653.

The majority would apparently depart from that longstanding practice and require plaintiffs to affirmatively plead around a statute of repose defense. If repose defenses are like governmental immunities, a defendant who raises this affirmative defense at 12(b)(6) could appeal any adverse ruling and potentially win on appeal by shifting the burden to the plaintiff, just as the Court of Appeals has interpreted a complainant's failure to plead a waiver of sovereign immunity as grounds to dismiss the complaint for failure to state a claim. *See, e.g.*, *Green v. Kearney*, 203 N.C. App. 260, 268 (2010).

At bottom, the majority appears to rely on general principles about what a statute of repose is to make categorical claims about the way such statutes affect parties' rights. This converts carefully designed legislative policies on conditional immunities from suit into judicially imposed standards detached from the facts of an appeal or a particular statute. Governmental immunities are already an unfair if necessary aspect of our common law. It is the duty of the legislature, not our Court, to decide which private defendants should be protected from a lawsuit generally and under what circumstances. Our Court should enforce the parameters of such statutes in ways that do not threaten to balloon immediate appeals of interlocutory orders and delay access to justice for injured parties. Because I would hold that the Court of Appeals did not err by dismissing this appeal, I respectfully dissent.

Justice RIGGS joins in this dissenting opinion.